NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 11 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HENDRY TANTRA TAN,<br><br>Petitioner,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>Respondent. | No. 15-72974<br><br>Agency No. A088-113-775<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted August 4, 2022[**]
Pasadena, California

Before: CALLAHAN and H. THOMAS, Circuit Judges, and HUMETEWA,[***] District Judge. Partial Concurrence and Partial Dissent by Judge CALLAHAN Judge

Hendry Tan petitions for review of a decision of the Board of Immigration

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable Diane J. Humetewa, United States District Judge for the District of Arizona, sitting by designation.

Appeals (BIA) affirming an immigration judge's (IJ) denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252. We grant the petition as to the asylum and withholding of removal claims. We deny the petition as to the CAT claim.

Tan is a native and citizen of Indonesia who is Christian and of Chinese ethnicity, two groups we have long recognized are disfavored in Indonesia. *See Tampubolon v. Holder*, 610 F.3d 1056, 1060, 1062 (9th Cir. 2010). Tan sought asylum, withholding of removal, and protection under the CAT, claiming that he feared persecution on account of his religion and ethnicity if removed to Indonesia. The BIA affirmed the IJ's finding that Tan had not established past persecution on account of a protected ground or a well-founded fear of future persecution.

1.      We begin with the BIA's past persecution analysis. Tan credibly testified to several incidents in which he was attacked or threatened by native Indonesians who invoked anti-Chinese slurs:

- In 2003, Tan was riding on a motorcycle with his cousin on his way to church when an Indonesian man yelled, "Hey Cina stop now," kicked the motorcycle over, laughed at Tan and his cousin, and said, "Damn you Chinese, you deserve to die." Tan and his cousin suffered minor wounds, and Tan still has a scar from the incident.

- In 2004, Tan and his girlfriend were confronted in an alley by Indonesians who demanded money to allow Chinese-owned cars to pass through the street. When Tan refused to pay, the men pounded on his car, yelling, "Damn you Chinese, Chinese you are stingy, pay donation or you will pay it

with your life." Tan was able to escape only by accelerating through the group of attackers.

- In 2005, Tan was the victim of a home invasion in which two Indonesian men put a knife to his throat and said, "Cina, don't scream if you want to stay alive," punched Tan in the face and spit on him, and stated, "Chinese, you are lucky that we did not kill you." They then robbed the home of valuables and left Tan locked inside.

The BIA did not decide whether these incidents rose to the level of persecution.[1] It instead found that Tan had not established past persecution for two other reasons: (1) Tan had not established that his ethnicity or religion were "one central reason" for the attacks and (2) Tan could not show that Indonesian authorities were unwilling or unable to protect him from persecution because he had not reported the attacks to the police. The BIA erred in both respects.

      a.      Substantial evidence does not support the BIA's conclusion that Tan's Chinese ethnicity was not "one central reason" for the attacks against him. The attackers' use of anti-Chinese slurs during the attacks "amply establishes the connection between the acts of persecution and [Tan's] ethnicity." *Baballah v. Ashcroft*, 367 F.3d 1067, 1077 (9th Cir. 2004). Though the BIA characterized the attacks as random crime, we have previously held in addressing materially indistinguishable facts that the repeated use of anti-Chinese slurs made clear that the petitioner's attackers "targeted *him*, and not some other bystander, because he

_____

[1] The record supports the BIA's separate conclusion that other incidents involving Tan's family members did not rise to the level of persecution.

3

is Chinese."[2] *Wakkary v. Holder*, 558 F.3d 1049, 1067 (9th Cir. 2009).

  b.  Because an asylum applicant "need not have reported [past] persecution to the authorities if he can convincingly establish that doing so would have been futile or have subjected him to further abuse," the BIA erred by focusing only on Tan's failure to report attacks to the Indonesian police in analyzing whether Indonesian authorities were unwilling or unable to protect him from persecution. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1065 (9th Cir. 2017) (en banc) (quoting *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006)).

  Tan repeatedly testified that it would have been futile to go to the police, both because the police demanded money to investigate crimes against Chinese, and because they would not have seriously attempted to investigate the attacks against him even if they had been paid. Indeed, Tan explained that his father had previously attempted to report an attack by native Indonesians to the police, only to be met with a demand for money.

  Because the BIA erroneously treated Tan's failure to report the attacks to the police as dispositive of whether the Indonesian authorities were unwilling or

---

[2] Although the BIA also erred in applying the "one central reason"—rather than the "a reason"—standard to Tan's withholding of removal claim, *Barajas-Romero v. Lynch*, 846 F.3d 351, 358–60 (9th Cir. 2017), this error is not material to our analysis because the record compels the conclusion that Tan's attackers were motivated by his Chinese ethnicity even under the more stringent standard.

unable to protect him, without analyzing whether such reports would have been futile, we remand for the agency to conduct this analysis in the first instance and to address any remaining issues relevant to whether Tan established past persecution.

2.     The BIA committed an additional legal error in its future persecution analysis. Because members of disfavored groups, such as Tan, face a heightened baseline risk of persecution, they require less individualized evidence to establish a well-founded fear of future persecution. *Wakkary*, 558 F.3d at 1064. The burden of demonstrating some individualized risk of future persecution can be met with evidence of past threats or violence, even if those incidents alone would be insufficient to establish past persecution. *Id.* at 1063; *Sael v. Ashcroft*, 386 F.3d 922, 927–29 (9th Cir. 2004).

Tan testified to several incidents in which he was personally attacked or threatened in Indonesia on account of his Chinese ethnicity. The BIA, however, did not address them in conducting its future persecution analysis. *Sael*, 386 F.3d at 927–29. We therefore remand for the BIA to conduct a complete future persecution analysis.

3.     Substantial evidence supports the denial of Tan's CAT claim. The record does not compel the conclusion that Tan is likely to be tortured if removed to Indonesia, or that Indonesian authorities would likely participate or acquiesce in conduct that constitutes torture.

Each party shall bear its own costs.

**PETITION GRANTED IN PART; DENIED IN PART.**

*Tan v. Garland*, No. 15-72974

CALLAHAN, Circuit Judge, concurring in part and dissenting in part:

I agree with all but Part 1(a) of the memorandum disposition. In my view, the record does not "compel" the contrary conclusion that Tan's attackers were motivated by his Chinese ethnicity under the "one central reason" standard. 8 U.S.C. § 1252(b)(4)(B); *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017). The attackers' use of language referencing Tan's ethnicity (calling him "Chinese" and "Cina") during the three incidents, standing alone, does not compel the conclusion that the petitioner's ethnicity was a motivating factor behind the attacks, as opposed to other possible motives evinced by the record. For example, the IJ noted that the home invasion robbery was motivated by a housekeeper "who saw an opportunity to steal." AR 61. Unlike the facts presented in *Baballah v. Ashcroft*, 367 F.3d 1067 (9th Cir. 2007), each of the attackers here were individual native Indonesians who referenced Tan's ethnicity during their crimes against him, not government officials using ethnic slurs. While these facts are certainly relevant to the past persecution analysis, *Wakkary v. Holder*, 558 F.3d 1049, 1068 (9th Cir. 2009), the IJ and BIA considered them and found that Tan had not established that his ethnicity was a central reason for the attacks. I do not agree with the majority that any reasonable adjudicator would be compelled to conclude to the contrary.

1